NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THOMAS CROSS,  :  |  |
| :  | Civil Action No. 08-3993 (DMC) |
| Petitioner,  :  |  |
| :  |  |
| v.  :  | O P I N I O N |
| :  |  |
| MICHELLE RICCI, et al.,  :  |  |
| :  |  |
| Respondent(s).  :  |  |

**APPEARANCES:**

Thomas Cross, <u>Pro Se</u>
#277250/502036B
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Lucille M. Rosano
Special Deputy Attorney General
Essex County Courts Building
50 West Market Street
Newark, NJ 07102
Attorney for Respondents

**CAVANAUGH, District Judge**

Petitioner Thomas Cross, a prisoner currently confined at the New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Administrator Michelle Ricci and Attorney General of New Jersey Anne Milgram.

For the reasons stated herein, the petition must be denied.

## BACKGROUND

### A. Factual Background

According to testimony elicited at trial,[1] on July 9, 1995, Petitioner and co-actor Warren Jenkins carjacked a red Beretta in West Orange. Five days later, on July 14, 1995, an elderly couple were going to visit a cemetery in Newark with John Deventer, a retired Hanover Chief of Police, who drove them to the cemetery weekly. On July 14, they were also accompanied by a landscaper.

Deventer and the elderly couple, the Wolf's, dropped off the landscaper at the cemetery and proceed to a bakery to buy bread. When they returned to the cemetery, Deventer went to join the landscaper and the Wolf's remained with the car, a Lincoln Towncar. Then, Petitioner and Jenkins arrived at the cemetery in the stolen Beretta, parked it outside the cemetery gate, and crawled through a hole in the fence. They targeted the Wolf's, separated, and came up behind the Wolf's in the car, and Petitioner whispered that they had a gun, told them to get out of the car, and that they would blow their brains out if they made any noise. Mr. Wolf complied, but Mrs. Wolf did not immediately comply, so Mr. Wolf attempted to help her and was yanked away from the car. Mr. Wolf had an unobstructed view of Petitioner.

---

[1] This factual background is for informational purposes only and is not intended to be all-inclusive.

Once Petitioner and Jenkins realized that the Wolf's did not have the keys to the car, they approached Deventer and waved their gun in his face, demanding the car keys. Deventer was defiant and thwarted their attacks, for a short time, with a broomstick. In the midst of the brawl, Deventer yelled, "I'm a cop." Either Petitioner or Jenkins at that point said, "shoot him," and the other obeyed. Deventer died from the gunshot wound. Petitioner and Jenkins escaped, one in the Towncar and one in the Beretta.

The next day, a woman, her infant child, and her father were returning to their white Honda Accord after a doctor's appointment. The woman was trying to secure the baby in the child seat when she heard a noise behind her. Petitioner approached her with a gun, and demanded her car keys. The woman was able to get the baby out of the seat and complied. The woman's father was more beligerent, and was hit in the face. The woman saw the red Beretta parked directly behind her Accord.

Police eventually caught up with Petitioner and proceeded to observe him get into the Accord. Following him in two police vehicles, they attempted to "box" in the Accord. When Petitioner realized he was being trapped, he crashed into one of the police cars, and a car chase ensued. Petitioner eventually crashed into another vehicle, then got out of the car and attempted to flee by foot. He was finally apprehended and secured.

In the police car, after being read his Miranda rights, Petitioner at first denied knowledge of the carjacking, then implicated Jenkins, saying that they were addicted to heroin, and they had "done something" earlier in the day.

Later in the day, in the custody of the Essex County Prosecutor's Office, Petitioner confessed to the carjackings, and stated that Jenkins shot and murdered the victim. Besides the confession, Petitioner was linked to the crime by several witnesses, including the victims of the carjackings.

In his defense at trial, Petitioner attempted to show that he was neither present at nor a participant in any of the crimes. He tried to place culpability on another criminal, William Drewery, who had shot a person at the same cemetery on the same day, and who was identified by Mr. Wolf as the assailant. However, police determined that Drewery was not the shooter in Deventer's case, because of the different types of guns used by the perpetrators.

B.  **Procedural History**

An Essex County Grand Jury indicted Petitioner on twenty-nine counts, including murder, felony murder, carjacking, first-degree robbery, conspiracy to commit robbery, conspiracy to commit carjacking, eluding the police, aggravated assault, possession of weapons for unlawful purposes, unlawful possession of weapons, receiving stolen property, resisting arrest, and

4

criminal mischief. Petitioner pled not guilty to the charges, and after a <u>Miranda</u> hearing, and a motion to request a <u>Wade</u> hearing,[2] Petitioner was tried by jury in June and July of 1996. Petitioner was convicted of all charges but unlawful possession of a weapon, and possession of a handgun for unlawful purposes.

On July 30, 1996, after merging certain convictions, the trial judge imposed an aggregate sentence of life with fifty years of parole ineligibility.

Petitioner appealed the conviction and sentence to the Superior Court of New Jersey, Appellate Division, which affirmed the convictions and sentence on April 20, 1999. The Supreme Court of New Jersey denied certification of the case on July 16, 1999.

On August 13, 1999, Petitioner filed a petition for post-conviction relief ("PCR"). The petition was denied on May 5, 2001. Petitioner appealed the denial, and on September 19, 2002, the denial was affirmed. The New Jersey Supreme Court denied certification of the case on July 8, 2003.

Petitioner filed a second PCR petition on or about July 23, 2003. That petition remained pending until June 18, 2007, when the trial court denied the relief sought. Petitioner appealed

---

[2] See <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966); <u>United States v. Wade</u>, 388 U.S. 218 (1967).

5

the denial, and on March 19, 2008, the Appellate Division affirmed the denial.

This petition, filed on August 11, 2008, followed. Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), on September 8, 2008. An Order to Answer was issued and Respondents filed a response to the petition on November 21, 2008. On December 8, 2008, Petitioner filed a Traverse.

C. Petitioner's Claims

Petitioner makes four arguments in support of his request for habeas relief:

1. The police did not scrupulously honor defendant's right to remain silent, thereby violating his Fifth Amendment rights and his corresponding state-constitutional and state common-law rights.

2. The trial judge gave an improper coercive instruction to the jury when asked if it was necessary for the jury to return verdicts for the counts charging murder and felony murder.

3. The testimony of a prosecutor's investigator regarding the codefendant's confession violated the defendant's right to confrontation under the state and federal constitution.

4. The sentence imposed is manifestly excessive.

(Petition, ¶ 12).

6

## DISCUSSION

A. <u>Standards Governing Petitioner's Claims.</u>

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000) (O'Connor, J.,

for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. See id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. See Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.

8

Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.  **Fifth Amendment Claim**

Petitioner argues that the police did not scrupulously honor his right to remain silent. He states that investigators from the prosecutor's office compelled him to answer questions, denied him the right to remain silent, and denied him his right to counsel during questioning. (Petition, ¶ 12A).

An extensive five-day Miranda hearing was held prior to the trial, which examined Petitioner's claims regarding his questioning. In a written opinion, the trial judge found that Petitioner did not request counsel and did not invoke his right to remain silent. (Re 5, attachment p. 59a). The Appellate Division reviewed Petitioner's claims on appeal and found:

> After a five-day Miranda hearing, Judge Lester found, in a written opinion, inter alia, that defendant

> had never "by words or conduct" invoked his right to remain silent. She concluded on this basis and others that no violation of Miranda had occurred when defendant was questioned at the Essex County Prosecutor's Office. Judge Lester's findings and conclusions were well supported by the record and command our deference.

(Re 7 at p. 3 (internal citations omitted)).

Petitioner's allegation that the trial judge erred in denying the Miranda motion lacks merit. The state courts invoked the correct law, held a pretrial hearing, and reasonably determined the facts in light of the evidence presented. Based on a review of the record, including the pretrial Miranda hearing, this Court can fathom no reason to upset the findings of the state court. See Fahy v. Horn, 516 F.3d 169, 196 (3d Cir. 2008) (state court decision to reject petitioner's request for suppression was not "contrary to" Supreme Court precedent, as state court adhered to the correct standard; further, "the suppression court was entitled to make the credibility determination that it did in the face of conflicting testimony, and it applied the correct law to its findings of fact and came to a reasonable conclusion").

This claim for habeas relief will be denied.

C. <u>Jury Question Claim</u>

Petitioner alleges that the trial judge gave an improper coercive instruction to the jury, which impeded the jury's function to render a verdict that was not directed by the court.

10

(Pet. ¶ 12B). During deliberations, the jury posed a question to the judge: "Do we have to reach a verdict on [count] nine [murder] and [count] ten [felony murder]?" The judge replied: "The jury is to deliberate with a view toward reaching a unanimous agreement on all counts of the indictment." (Transcript dated July 11, 1996, at pp. 3-4). Petitioner argues that the instruction coerced an otherwise deadlocked jury to reach a verdict.

The Appellate Division considered this argument, and found that: "Judge Lester's response to the jury's question whether it was required to reach a verdict on the murder and felony-murder charges was appropriate and in no way coercive. It was not error, let alone plain error." (Re 7 at p. 3).

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief. Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." "Beyond the specific guarantees enumerated

11

>   in the Bill of Rights, the Due Process Clause has
>   limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (internal citations omitted). Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." Smith v. Horn, 120 F.3d 400, 416 (1997). See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

In this case, the jury charge given by the judge in response to the jury's question did not wrongly describe the burden of proof. Nor did the charge implicate due process concerns. The state courts did not find any error under state law with the charges, and this Court cannot ascertain any error that would rise to the level of a Constitutional deprivation.

In this case, a review of the record and the response to the jury question reveals that Petitioner has not demonstrated that his entire trial and conviction was so prejudiced by the response to the question as to violate the principles of fundamental

12

fairness and due process. There was ample evidence against Petitioner to justify his conviction, including Petitioner's own statements. Petitioner's conviction was based on a credibility determination by the jury, who chose to believe the state's witnesses over Petitioner's version of events. Petitioner's conviction was neither fundamentally unfair, nor violated due process.

Further, Petitioner has not demonstrated that the decision of the state courts was contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Petitioner is not entitled to relief on this claim.

D.  **Improper Testimony Claim**

Petitioner argues that the testimony of a prosecutor's investigator regarding his co-actor's confession violated Petitioner's right to a fair trial, and his right to confront witnesses. (Pet., ¶ 12C).

At trial the following questioning occurred:

Q:  Why didn't you show the Drewery array to Mr. Fischer?

A:  Well, by the time we had gotten to Mr. Fischer, it was a few days after the incident. By that time we had two, namely two confessions of [defendant] and [co-actor Jenkins] indicating their involvement with the incident itself. ...

13

(Transcript of July 3, 1996 at p. 168). Although defense counsel requested a mistrial, the trial judge denied the request and gave the jury a curative charge immediately after the testimony, stating:

> During the course of the witness' last statement he referred to a statement made by Mr. Jenkins. Mr. Jenkins is not on trial here. Although there has been testimony and appropriately so concerning his involvement in their case which I will talk to you about during my charge on the law because you will need to understand accomplice liability, etc.
>
> So Mr. Jenkins has been mentioned here by any statements made by Mr. Jenkins are not part of this trial. Statements that you will be permitted to reevaluate have been made by [defendant].
>
> Therefore, you are to completely disregard the portion of the witness' response that concerning anything [Jenkins] may have said or not said. It is not in this trial. It is not to be considered here. The fact one was made or not and of course I would not permit you to hear any detail in any event.
>
> So that part, that comment must play no part in your deliberations. In this case you are to ignore that. You have enough to think about here.

(Transcript of July 3, 1996 at pp. 172-73). The judge also instructed the jury in her formal charge that testimony concerning the co-actor's statements should be disregarded. (Transcript of July 10, 1996 at p. 118-119).

The Appellate Division examined Petitioner's claim that the reference to the co-actor's confession prejudiced the jury, and found:

> To the extent the passing mention of a co-actor's confession had any capacity to prejudice the jury's

14

> consideration of the charges against defendant, that possibility was eliminated by Judge Lester's prompt and detailed curative instruction at the time, following her denial of defendant's motion for a mistrial. The additional cautionary language in Judge Lester's general charge further emphasized the jury's duty in this regard. It is to be presumed that the jury followed the judge's instructions faithfully.

(Re 7 at pp. 3-4 (internal citations omitted)).

For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. See Keller v. Larkins, 251 F.3d 408, 413 (3d Cir.), cert. denied, 534 U.S. 973 (2001). This Court agrees with the state courts, that Petitioner has failed to show that the fleeting reference to the co-actor prejudiced the jury or rendered Petitioner's trial "fundamentally unfair." Furthermore, even assuming that the comment concerning the co-actor influenced the jury, the trial judge issued an immediate curative instruction in order to remedy any possible confusion or prejudice.

Thus, Petitioner has not demonstrated that the decision of the state courts was contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Petitioner is not entitled to relief on this claim.

E. <u>Excessive Sentence Claim</u>

Petitioner argues that life with 50 years is an "extremely excessive" sentence. (Petition, ¶ 12D). The Appellate Division reviewed this claim and found:

> The sentence was appropriate in the face of the crimes committed. It reflected Judge Lester's meticulous and incisive consideration of established principles governing merger, concurrency and consecutiveness, as well as her scrupulous application of aggravating and mitigating factors, and the Graves Act. Given the existence of those qualities, the permissible scope of appellate review of the trial judge's sentencing discretion is limited.

(Re 7, at p. 4 (internal citations omitted)).

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." See <u>Grecco v. O'Lone</u>, 661, F. Supp. 408, 415 (D.N.J.1987)(citation omitted). Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation. See <u>Pringle v. Court of Common Pleas</u>, 744 F.2d 297, 300 (3d Cir. 1984). See also 28 U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991); <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990).

For example, in <u>Gryger v. Burke</u>, 334 U.S. 728, 731 (1948), the Supreme Court rejected Petitioner's due process challenge to a life sentence imposed by the Pennsylvania courts. Petitioner

16

argued that the sentencing judge mistakenly regarded as mandatory a sentence which was discretionary. The Supreme Court held:

> We are not at liberty to conjecture that the trial court acted under an interpretation of the state law different from that which we might adopt and then set up our own interpretation as a basis for declaring that due process has been denied. We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.

Id. at 731.

Here, Petitioner apparently claims, at most, an error of state law, which is not amenable to correction in a federal habeas corpus proceeding. See 28 U.S.C. § 2254(a). The Appellate Division reviewed the judge's sentence and found that it comported to state law. Petitioner is not entitled to relief on this claim.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate

17

to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability will issue.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is denied. The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.

DENNIS M. CAVANAUGH
United States District Judge

Dated: 6/23/09